# EXHIBIT H

## WRITTEN CONFIRMATION OF ORAL DECISION AND AWARD
(Made and Given to Parties via Conference Call on January 9, 2020)

I should start by noting that Daniel Navarro's Disciplinary Counseling Memorandum of June 19, 2018 and resulting disciplinary action is not a matter that is properly before the Arbitrator for his consideration and determination as the Disciplinary Counseling Memorandum and disciplinary action taken against Daniel Navarro on June 19, 2018 was not grieved by Mr. Navarro and/or his Union, nor was there any agreement made by the Parties to include the matter in the May 17, 2019 arbitration proceedings on the matter of Grievant Navarro's termination of July 12, 2018, as such the matter was not made a part of the May 17, 2019 arbitration proceedings. By not grieving the June 19, 2018 Disciplinary Counseling Memorandum, Mr. Navarro agreed to accept the disciplinary action taken against him at that time for his unprofessional, inappropriate and wholly unacceptable comments, which were of a sexual nature, made on Friday, June 15, 2018. The Parties, in turn, agreed, given the matter was not grieved, that this constituted the resolution of the matter (the June 15, 2018 incident). The discipline taken against Daniel Navarro on June 19, 2018 for his comments and actions of June 15, 2018 remains undisturbed by the Arbitrator and the Parties and remains in effect at the time of this writing and in the future as well.

While it was made clear early on at the May 17, 2019 arbitration hearing on the July 12, 2018 termination of Grievant Navarro that the Disciplinary Counseling Memorandum of June 19, 2018 was not a matter that was properly before the Arbitrator or made a part of the May 17, 2019 arbitration proceedings, it would appear that it is necessary to make note of this once again given that Grievant Navarro spent a lot of time at the May 17, 2019 arbitration hearing raising claims and protesting much about the June 19, 2018 Disciplinary Counseling Memorandum and resultant disciplinary action taken against him. He claimed he did not even know that disciplinary action had been taken against him at the time and he claimed that he did not know Patient Z's name or what she looked like and kept asking management how he was supposed to not have contact with Patient Z when he did not know her name or what she looked like, all of which was contrary to the credible testimony of the Employer Witnesses who took part in the investigation into the June 15, 2018 incident and the June 19, 2018 meeting during which Mr. Navarro was issued the June 19, 2018 Disciplinary Counseling Memorandum.

Management Witnesses credibly testified that he was given Patient Z's name and made no claim that he did not know her name or what she looked like at that time. Daniel Navarro was also instructed to not draw Patient Z's blood or have any contact with her in the future. He was informed that for him to do so he needed to remember Patient Z's name. Her last name began with a Z, which is quite uncommon and it was credibly testified to that her last name was also unique in nature. If Daniel Navarro had any unresolved issues concerning his ability to remember Patient Z's name or what she looked like, he should have discussed the matter further with HR and/or his Supervisor and if his efforts to ensure he would be able to remember Patient Z and her name were not satisfactorily resolved, he should have grieved over the matter at that time. He did not do so.

Additionally, one should keep in mind that the time between the June 15, 2018 incident and the July 2, 2018 incident is not a very long period of time for one to remember what a person looks like or what their name is, particularly under the circumstances in existence at the time.

This then leads us to his having denied that he was able to recall Patient Z's name or what she looked like at the time of the July 2, 2018 incident. I find it very hard to believe that he did not remember Patient Z's name given her last name began with a Z, which, as stated earlier, is uncommon, and as credibly testified to was unique in nature; however, assuming that he was somehow unable to recognize Patient Z's name before he entered the room, I believe, at the very least, he should have been able to remember that her last name began with a Z. Since this Patient's last name began with a Z and he was unsure if she might be the Patient who had filed a complaint against him for sexual harassment just a few weeks earlier, should this not have raised a red flag and lead him to check into it to ensure that this Patient was not the Patient he was not to draw blood from or have any contact with in the future. Having done so would have prevented the matter from progressing any further.

While it is the opinion of the Arbitrator that this would be a very reasonable expectation of Grievant Navarro, he failed to meet this reasonable expectation which resulted in his entering Patient Z's room where he proceeded to ask Patient Z her name at which time he would have heard her speak and even more importantly saw her once again. Given he had seen the Patient less than three (3) weeks earlier, it would not be unreasonable to expect him to have recognized her and, at least initially, he admitted that he did recognize her at the time he first entered her room per his e-mail to his Supervisor, Amir Pourlak, about the incident and also admitted he recognized her when he first entered Patient Z's room during the investigatory meeting (per the credible testimony of management participants). Once Daniel continued to proceed further and began the process of drawing Patient Z's blood, he put himself in line for, and provided the Employer with just cause for serious disciplinary action against him.

Mr. Navarro was warned in the June 19, 2018 Disciplinary Counseling Memorandum meeting that should he draw Patient Z's blood and/or have contact with her in the future, he could be terminated.

Grievant Navarro, as stated above, initially admitted in the investigating meeting over the July 2, 2018 meeting that he recognized Patient Z when he first entered her room only to change his story again and again in an effort to find one that would absolve him of any inexcusable wrong doing. I find his changing testimony in his efforts to find an acceptable scenario that would absolve him of any wrong doing to be lacking in credibility, which the Arbitrator sees as an aggravating factor to be given consideration when determining whether or not just cause exists for the Employer to have terminated Grievant Navarro for his actions on July 2, 2018.

However, before determining just cause exists for his termination as a result of his July 2, 2018 actions, we need to consider the following factors:

The Arbitrator is persuaded by the evidence in the record that the possibility exists that once Daniel Navarro entered Patient Z's room on July 2, 2018 (after somehow failing to recognize Patient Z's name on his lattice, (even though her last name begins with a Z and was established through credible testimony that her name was unique in nature), he found himself in a bit of a dilemma because he, as established by the credible and persuasive evidence, recognized Patient Z and knew she was the patient he was not to draw blood from or have any contact with; despite this, I believe it is a real possibility that he may have felt pressured to draw Patient Z's blood as the evidence shows that the nurse was anxious to get her blood drawn and get the results to the doctor ASAP and even urged him to get on with it after he had spoken to Patient Z about his being there to draw her blood. Again, I believe it is possible that he felt that he could get in and get out so-to-speak without incident given the nurse was in the room and it did not appear that Patient Z objected to his drawing her blood. The Grievant testified that she did not say no and I believe in saying this, he was indicated that he felt she did not object to him drawing her blood and believed that if she did object to his drawing her blood at that time, she would have asked for a different phlebotomist to draw her blood (which is not that uncommon of an occurrence). It is also the Arbitrator's belief that, even under these circumstances, the Grievant felt a sense of obligation and duty to perform his job. He stated in his testimony that he was just doing his job.

Not long after Daniel drew Patient Z's blood at 3:39 P.M., I believe he realized that his decision to do so was the wrong decision and decided he should self-report the incident by notifying his Supervisor Amir Pourlak of the incident, which he did in an e-mail made at 3:57 P.M. During this period of time, at 3:45 P.M., Patient Z made a complaint about the incident. While the possibility exists that Daniel Navarro could have seen something occur on the floor, such as a person or persons go into Patient Z's room, before he self-reported the incident to Supervisor Pourlak and alerted him to the possibility that Patient Z filed another complaint against him, which led to his self-reporting on the incident, there is insufficient evidence in the record to establish he had any knowledge that Patient Z filed a complaint against him prior to his having self-reported the incident to Supervisor Pourlak at 3:57 P.M.

I believe that the fact that he apparently realized he had made the wrong decision to draw Patient Z's blood on July 2, 2018 and self-reported the incident to his Supervisor should mitigate against his being terminated from his employment even though he had drawn Patient Z's blood and in so doing failed to comply with his Employer's directive from the June 19, 2018 Disciplinary Counseling Memorandum not to draw Patient Z's blood or have any future contact with her. Grievant Navarro also did not conduct himself in any unprofessional, unacceptable or inexcusable manner on July 2, 2018, when drawing Patient Z's blood. Nor was Daniel Navarro terminated for having committed any acts or having made any comments of a sexual nature which constituted actions of an unprofessional, unacceptable and inexcusable nature. This, I believe, should also be a consideration in my deliberations on whether or not just cause existed for his termination on July 12, 2018. His length of service is also a factor that should be given consideration as well.

It is the opinion of your Arbitrator that the Employer had just cause to take severe disciplinary action against Grievant Daniel Navarro for his actions on July 2, 2018, however,

when giving consideration to the mitigating factors and other considerations provided above, I find that the penalty of termination should be modified to the sufficiently serious disciplinary action of an eighteen (18) month and one (1) week suspension. Also as a requirement for his reinstatement he should once again complete the Workplace Harassment Training in You Learn (within a reasonable time period determined by the Employer) and is to review, understand, and comply with Memorial Care's Code of Conduct.

In addition, Daniel Navarro is to meet with Human Resources to discuss and ensure he has a complete and thorough understanding of the importance of his complying with any and all instructions, directives, and orders given him by the Employer to the letter, without fail. During his meeting with HR, he should also be given Patient Z's name again so that he can take the necessary steps to commit it to memory, write it down and keep it in a safe place, such as his wallet to refer to, if needed, (while keeping her name confidential) to ensure he knows Patient Z's identity and does not draw her blood or have any contact with her in the future.

Furthermore, it should also be stated that Daniel Navarro is not to draw Patient Z's blood or have any contact with her in the future. Failure to comply with this directive will provide the Employer with just cause for his termination.

It should also stated with respect to just culture used by the Employer to judge if a given penalty is warranted for one's action in a given situation; in this case, I was not persuaded by the evidence that Daniel Navarro was intentionally insubordinate or guilty of reckless behavior due to his actions of July 2, 2018 when he entered Patient Z's room and drew her blood. However, he was clearly guilty of extremely poor judgment.

For all the reasons set forth herein, I find that the disciplinary penalty of termination for the Grievant's actions on July 2, 2018 should be modified to a disciplinary suspension of eighteen (18) months and one (1) week. Daniel Navarro should be reinstated and is eligible to be returned to work on Monday, January 20, 2020. Should his reinstatement and return to work be delayed beyond Monday, January 20, 2020, he would be eligible for back pay beginning on that day, Monday, January 20, 2020.

It should also be noted that should Daniel Navarro be currently employed elsewhere and need to give his current employer a two (2) week notice, he may do so and his return date should be adjusted accordingly.

This Decision and Award made orally and shared with the Parties on January 9, 2020 has been reduced to writing to serve as written confirmation of the oral Decision and Award. Written Confirmation made this 16th day of January, 2020, in Oceanside, California.

_____
Ralph E. Pelhan
Labor Arbitrator





FedEx Express

TRK# 7797 2506 0711 0201

WZ CIBA

FRI - 17 JAN 10:30A
PRIORITY OVERNIGHT

90067
CA-US LAX

TO CHRISTINA RENTZ ATTORNEY AT LA
EPSTEIN BECKER & GREEN, P.C.
1925 CENTURY PARK E STE 500
LOS ANGELES CA 90067

ORIGIN ID:CLDA (760) 758-1227
RALPH E. PELHAN
4322 MIRAGE LN
OCEANSIDE, CA 92056
UNITED STATES US

SHIP DATE: 16JAN20
ACTWGT: 0.30 LB
CAD: 6990679/SSF02021

BILL CREDIT CARD

317
EXHIBIT H